UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRELL KENNETH BROWN-
MOSBY,

              Plaintiff,

v.

CITY OF DETROIT,
BRIAN GADWELL, and
STEVEN RAUSER,

              Defendants.

_____/

Case No. 4:22-cv-10336
District Judge F. Kay Behm
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS GADWELL AND RAUSER'S MOTION FOR SUMMARY JUDGMENT (ECF No. 19)

**I.    RECOMMENDATION**:  The Court should **GRANT** Defendants Gadwell and Rauser's motion for summary judgment (ECF No. 19) and dismiss this matter.

**II.    REPORT**

### A.    Background

On October 23, 2018, Terrell Kenneth Brown was paroled in a matter unrelated to the case at bar.  (ECF No. 19-3, PageID.156-157.)  This lawsuit stems from the alleged events of March 4, 2019, at which point he was still on parole. (ECF No. 19-7, PageID.182-183, 189; *see also* ECF No. 19-3, PageID.112.)  It is not in dispute that, on that date, Detroit Police Officers Brian Gadwell and Steven

Rauser pursued Brown-Mosby, and he was arrested.  (ECF No. 1, ¶¶ 9, 30, 33; ECF No. 19, PageID.79-80.)[1]

Brown-Mosby was charged with several crimes, including, *inter alia*, fleeing a police officer (second degree), unlawful driving away, and assaulting / resisting / obstructing a police officer.  *See* Case No. 19-002344-01-FC (Wayne County). (ECF No. 19-6, PageID.173-174.)  On August 22, 2019, at which time he still appears to have been on parole, he pleaded guilty to one count of police officer fleeing second degree.  (*Id*., PageID.163-172.)  On September 9, 2019, he was sentenced to prison.  (*Id*., PageID.174.)

### B.    Instant Lawsuit

On February 3, 2022, while located at the Michigan Department of Corrections (MDOC) Muskegon Correctional Facility (MCF), Brown-Mosby initiated this lawsuit *in pro per* against the City of Detroit, Gadwell, and Rauser. (ECF No. 1.)  Brown-Mosby's causes of action include:  (1) failure to intervene and use of excessive force pursuant to 42 U.S.C. §§ 1983, 1985; (2) municipal

---

[1] *See also* ECF No. 19-3 (City of Detroit's Arrest Packet), ECF No. 19-4 (911 Audio/Dash Cam and Body-Warn Camera [BWC] Video).  As to the latter, the jump drive produced to the Court contains the following:  (1) audio of the 911 call; (2) Andrew VanScyoc BWC video; (3-5) three photographs; (6) John Pinchum BWC video; (7) Sean Bell BWC video; (8) dash camera video of Tawanna Jenkins; and (9) Rauser BWC video.  On May 11, 2023, the Court granted Gadwell and Rauser's *ex parte* motion for leave to file an exhibit using media file upload. (ECF Nos. 24, 25.)

liability against City of Detroit pursuant to 42 U.S.C. § 1983; (3) assault and battery under state law; (4) gross negligence under Mich. Comp. Laws § 691.1407; and, (5) intentional infliction of emotional distress under state law.  (ECF No. 1, PageID.4-13 ¶¶ 18-45.)

On April 26, 2022, this Court entered an order dismissing the City of Detroit.  (ECF No. 13.)  Accordingly, only Counts I, III, IV, and V remain.

### C.    Instant Motion

Judge Behm has referred this case to me for pretrial matters.  (ECF No. 21.) Currently before the Court is Defendants Gadwell and Rauser's December 20, 2022 motion for summary judgment (ECF No. 19), as to which Plaintiff's response was due initially on or about January 10, 2023.  E.D. Mich. LR 7.1(e)(2)(A).

On January 26, 2023, noting that Plaintiff had yet to file a response, the Court entered an order requiring Plaintiff "to show cause no later than February 16, 2023 for why summary judgment should not be granted pursuant to the justification set forth in the summary judgment motion."  (ECF No. 20.)  The order further explained:  "If Plaintiff fails to timely show cause, the Court will consider the motion for summary judgment without his response.  And if the Court finds that summary judgment is proper, the Court may grant summary judgment and dismiss the case."  (*Id*.)

Plaintiff filed a motion for enlargement of time within which to file a response, due to the "unavailability of legal assistance at his present place of incarceration" and "delay in obtaining photocopies . . . ." (ECF No. 22.)[2]  On February 23, 2023, I entered a text-only order granting the motion in part, discharging the earlier show cause order, extending the response deadline to April 10, 2023, and expressly stating, "Plaintiff will receive no further extensions as to this motion."  (ECF No. 23.)  A copy of this order was served upon Plaintiff at Bellamy Creek Correctional Facility (IBC), and there is no indication on the docket that it was returned as undelivered.

To date, Plaintiff has not filed a response.  Thus, Gadwell and Rauser's motion for summary judgment is unopposed.  Nonetheless, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).  "The Court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." *Id.*

---

[2] Although the motion was filed on February 21, 2023, it is dated February 13, 2023 and appears to have been postmarked on February 14, 2023 and February 15, 2023.  (ECF No. 22.)

### D.      Plaintiff's contact information

Shortly after the Court granted Plaintiff's application to proceed *in forma pauperis* and directed service of process by the U.S. Marshal (ECF Nos. 4, 5, 6), the Clerk of the Court issued a notice regarding parties' responsibility to notify the Court of address changes (ECF No. 7).  Plaintiff heeded this directive on October 14, 2022, when he informed the Court of his transfer to IBC (ECF No. 16), and IBC appears to have been the correct address through at least mid-February 2023 (ECF No. 22).[3]

### E.      Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

---

[3] At the time of Brown-Mosby's most recent filing – dated mid-February 2023 – he was located at IBC.  (ECF No. 22.)  At his October 25, 2022 deposition, at which point he was located at IBC, Brown-Mosby represented that he was scheduled to be released on March 8, 2023.  (ECF No. 19-7, PageID.190-191.)  However, the MDOC's Offender Tracking Information System (OTIS) listed him earlier this month to be located at the Charles E. Egeler Reception & Guidance Center (RGC), although his assigned location is now the St. Louis Correctional facility (SLF), with an image date of April 28, 2023.  *See* www.michigan.gov/corrections, "Offender Search," #361490 (last visited July 14, 2023).  Nonetheless, the text-only order mailed to Plaintiff on May 11, 2023 at IBC (ECF No. 25) was returned as undeliverable, apparently after having been re-addressed to RGC (ECF No. 26).  It is Plaintiff's responsibility to keep the Court apprised of his "current contact information . . . ."  E.D. Mich. LR 11.2 ("Failure to Provide Notification of Change of Address").

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.

Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC

v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.

Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat

the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  To

survive summary judgment, one "must do more than simply show that there is

some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.

*See also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th

Cir. 2011) ("The nonmovant must, however, do more than simply show that there

is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment."  *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted) .

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative.  *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## F.    Discussion

### 1.    Plaintiff's factual allegations concern his March 4, 2019 arrest.

Preliminarily, in their motion, Gadwell and Rauser describe a "dangerous vehicular chase" followed by a "foot chase."  (ECF No. 19, PageID.86.)  Notably, Plaintiff's factual allegations begin at the point of the "on foot" pursuit.

7

According to Brown-Mosby, Detroit Police Officers Gadwell and Rauser "pursued [him] on foot before tackling [him] to the ground." (ECF No. 1, ¶ 9.) Plaintiff also alleges that, despite him "offering no resistance after being tackled," Gadwell "struck Plaintiff in the head multiple times with his City of Detroit issued weapon[,]" and Rauser "deployed his City of Detroit issued taser into Plaintiff's back at close range." (*Id.*, ¶¶ 10-11.) Plaintiff further alleges Gadwell and Rauser "wrote false police reports about the excessive use of force." (*Id.*, ¶¶ 12.)

Plaintiff alleges that Gadwell and Rauser "acted in bad faith in exerting excessive force upon Plaintiff[,]" and:

    a.    Exerted excessive force upon Plaintiff in violation of his 4th Amendment rights;

    b.    Failed to intervene to stop the wrongful conduct of another officer;

    c.    Was grossly negligent, and made Plaintiffs condition worse after taking him into their custody and control; and,

    d.    Intentionally caused serious emotional distress[.]

(ECF No. 1, PageID.¶¶ 14, 16.) These assertions align with Counts I, III, IV, and V.

## 2.    Count I

Plaintiff's first cause of action is based on 42 U.S.C. §§ 1983, 1985 and alleges the "individual police defendants" – *i.e.*, Gadwell and Rauser – were acting "in their individual capacities," "under color of state law[,]" "fail[ed] to intervene,"

and violated his "right to be free from the use of excessive force (4th and 14th

Amendment)[.]"  (ECF No. 1, ¶¶ 19-20.)  Plaintiff alleges the direct and proximate

result of Gadwell and Rauser's actions was "injury and damages . . . ."  (*Id.*, ¶ 21.)

### a.  Fourth Amendment, reasonableness of force, & *Graham*

Plaintiff's Fourth Amendment excessive force claim is based on Defendant's

use of force – in this case allegedly tackling him and, without resistance on his

part, striking him in the head multiple times with a weapon and using a taser on his

back.  (ECF No. 1, ¶¶ 9-11.)  This Court has previously stated:

> In order to hold an officer liable for excessive force, the plaintiff must prove that the officer:  (1) actively participated in the use of excessive force; (2) supervised the officer who used excessive force; or (3) owed the victim a duty of protection against the use of excessive force.  *Turner v. Scott,* 119 F.3d 425, 429 (6th Cir.1997).

> Whether force is excessive is judged under the Fourth Amendment reasonableness standard.  *Graham v. Connor,* 490 U.S. 386, 395[] (1989).  "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* at 396. . . . Proper application of the reasonableness test requires careful attention to "the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* (citation omitted).  Reasonableness is judged from the perspective of a reasonable officer on the scene and not with the benefit of hindsight.  *Id.*  "Not every push or shove ... violates the Fourth Amendment."  *Id.*  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make

9

split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396–397 . . . .

*Skover v. Titchenell*, 408 F. Supp. 2d 445, 449-450 (E.D. Mich. 2005) (Roberts, J.).

*See also Slayton v. City of River Rouge*, 515 F. Supp. 3d 695, 702-703 (E.D. Mich. 2021) (Borman, J.) (discussing *Graham* factors), *reconsideration denied*, No. 17-13875, 2021 WL 859028 (E.D. Mich. Mar. 8, 2021), and *appeal dismissed sub nom. Slayton v. City of River Rouge, Michigan*, No. 21-1278, 2022 WL 1044040 (6th Cir. Apr. 7, 2022).   In fact, the Sixth Circuit recently penned:  "Because police officers making split-second decisions usually 'face a range of acceptable options,' we must defer to the officer's 'on-the-spot judgment' in deciding what was reasonable." *VanPelt v. City of Detroit, Michigan*, 70 F.4th 338, 340 (6th Cir. 2023) (quoting Ashford v. Raby, 951 F.3d 798, 801 (6th Cir. 2020)).  "As in other Fourth Amendment contexts, . . . the 'reasonableness' inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

### b.    Attempting to evade arrest by flight (the tackle)

Here, the specific "reasonableness" factor at issue is "whether [Brown-Mosby was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  Plaintiff alleges that Defendants "pursued Plaintiff on

10

foot before tackling Plaintiff to the ground." (ECF No. 1, ¶ 9.) And the Court notes Plaintiff's October 25, 2022 deposition testimony that he was attempting to get away from Gadwell and Rauser at the time they were apprehending him (ECF No. 19-7, PageID.181 [p. 21]), he fled because he was on parole (*id*., PageID.189 [p. 52]), and he pleaded guilty to fleeing and eluding (*id*., PageID.190 [p. 57]). Thus, even Plaintiff admits he was "attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. *See also Carden v. City of Knoxville, Tennessee*, No. 3:15-CV-314-TAV-HBG, 2017 WL 5709590, at *7 (E.D. Tenn. Jan. 23, 2017) ("The decedent also actively resisted arrest and attempted to evade arrest by flight before being tackled by defendant."), *aff'd*, 699 F. App'x 495 (6th Cir. 2017); *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) ("As the cases that we have canvassed fairly indicate, the standards governing the constitutionality of Lyons' excessive-force tackling claim 'depend[ ] very much on the facts of each case.' *Id.* To that end, we have been unable to identify a single case predating the conduct at issue that prohibits tackling in a materially similar context.").

### c.   Actively resisting arrest (use of strikes and taser)

Turning to whether Plaintiff was "actively resisting arrest," *Graham*, 490 U.S. at 396, Plaintiff alleges that "[d]espite . . . offering no resistance *after being tackled*," Gadwell struck him in the head multiple times with his city-issued

weapon and Rauser deployed his city-issued taser "into Plaintiff's back at close range."  (ECF No. 1, ¶¶ 10-11 (emphasis added).)

### i.      Qualified immunity

Perhaps in response to Plaintiff's allegations that his constitutional right "to be free from the use of excessive force" was "clearly established," (*see* ECF No. 1, ¶¶ 13, 20a), Gadwell and Rauser argue that they "are entitled to qualified immunity as to plaintiff's excessive force claims[.]"  (ECF No. 19, PageID.73, 84-87.) "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken[.]"  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow*, 457 U.S. at 818-819).

Defendants contend that "[a]t no time did the defendant officers engage in behavior that violated the Plaintiff's clearly established constitutional rights." (ECF No. 19, PageID.86.)  The Supreme Court has stated that *Graham* – notably, a case in which qualified immunity was not raised, *see Graham*, 490 U.S. at 399 n.12

– "clearly establishes the *general* proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 201-202 (2001) (emphasis added). Yet, "the right the official is alleged to have violated must have been 'clearly established' in a more *particularized*, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640 (emphasis added). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). As the Supreme Court has explained:

> "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. [73, 78-79] (2017) (per curiam ) (alterations and internal quotation marks omitted). "Because the focus is on whether the officer had *fair notice* that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198[](2004) (per curiam ).

*Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (emphasis added). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." (*Id*. (citations and quotations omitted).) "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would

13

have understood that he was violating it.'" *Kisela*, 138 S. Ct. at 1153 (quoting *Plumhoff v. Rickard,* 572 U.S. 765, 778-779[](2014)).  *See also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela*).

## ii.   Clearly established rights

Gadwell and Rauser acknowledge "it is clearly established that people have a right to not be subjected to excessive force during an arrest[.]"  (ECF No. 19, PageID.85.)  In a more particularized sense, the Court notes that the right of a suspect to be free from strikes depends on whether the suspect is actively resisting arrest.  *See*, *e.g.*, *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008) ("The right of an unresisting suspect to be free from baton strikes, 'significant pressure on [his] back,' and a dose of chemical irritants was clearly established over three years before Jones died."); *Kidis v. Reid*, 976 F.3d 708, 720 (6th Cir. 2020) ("And while it was conceivable that Moran would need to apply some force to arrest Kidis safely, there was no conceivable need for Moran to knee strike, choke, and punch Kidis once Moran was on top of Kidis while Kidis was making no effort to resist arrest.  Once Moran had physical control over the surrendering and unresisting Kidis, Moran's subsequent aggression violated Kidis's clearly established right to be free from excessive force.") (citation omitted).

The same is true of tasing.  *See*, *e.g.*, *Kent v. Oakland Cnty.*, 810 F.3d 384, 392 (6th Cir. 2016) ("We have often found that the reasonableness of an officer's

use of a taser turns on active resistance[.]"); *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012) ("If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him."); *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015) ("Our cases firmly establish that it is not excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest.") (citing *Hagans*, 695 F.3d at 509).

### iii.    The evidence

Defendants argue that "the video tape and police reports make clear that [they] were dealing with a plaintiff actively resisting arrest . . . ."  (ECF No. 19, PageID.85-86.)  Of particular note are:  (a) Rauser's arrest report (ECF No. 19-3, PageID.112-114); (b) Rauser's case supplemental report (*id*., PageID.131, 151-152); (c) Gadwell's case supplemental report (PageID.135-137, 143-146); and, (d) Rauser's 48-second Body Worn Camera ("BWC") video (ECF No. 19-4). Although Brown-Mosby has not filed an opposition to this motion, his perspective can be found in:  (a) his October 25, 2022 deposition testimony (ECF No. 19-7); if not also in, (b) Investigator Manuel Gutierrez's case supplemental report (ECF No. 19-3, PageID.133).

As a preliminary matter, Gadwell's case supplemental report describes, *inter alia*, the vehicular chase, the foot chase,[4] and the struggle.  (ECF No. 19-3, PageID.135-137, 143-146.)  Bearing in mind that context in excessive force cases is always important, Defendants' convincingly point out:

> Defendant Officer Gadwell believed that he was chasing an armed individual who had committed a violent felony that same day, who had just backed a pick-up truck into the Defendant's scout car, and who had just led them on a vehicular chase prior to setting off on foot. Given these facts due weight, the fact that Defendant Officer Gadwell had his weapon drawn during the foot chase was completely acceptable to protect himself, his partner, and any civilians from the danger presented.

(ECF No. 19, PageID. 86.)[5]  In describing the foot chase, Gadwell's report states, *inter alia*, that Plaintiff slipped on the ice, fell to the ground (striking his back and head *on the ice covered driveway*), got back up and continued to flee.  (*Id.*, PageID.135, 144.)  Gadwell explains that, Plaintiff "continued south between the

_____

[4] In Gadwell's report, while explaining the foot chase, he states:  "The offender then attempted to run south in a yard next to 860 Taylor when he slipped on the ice.  His feet went out from under him and he fell to the ground striking his back and head on the ice covered driveway.  The offender was able to get back up and continue to flee . . . ."  (ECF No. 19-3, PageID.135, 144.)

[5] Although the alleged violent felony appears to have occurred on *the day prior to* the incident in question (*see* ECF No. 19-3, PageID.141, 149), the arrest report, Rauser's case supplemental report, and Gadwell's case supplemental report support claims of:  (1) the truck backing into the front of the scout car; (2) Plaintiff "grabbing his right side waist band as he turned in to the yard[;]" and, (3) Gadwells' belief that the offender was armed, "due to the fact of it being a r/a [robbery armed] udaa [unlawful driving away of auto] vehicle and offender grabbing at his right side . . ."  (*See id.*, PageID.114, 131, 152, 135, 144.)

houses on *the side of 860 Taylor* . . . [,]" he "approached another closed gate at the

front of the house[,]" and, as Gadwell "attempted to tackle the offender[,]" Brown-

Mosby "lost his footing and went down to the ground." (*Id*., PageID.135-136,

144-145 (emphasis added).)

### (a)   Post-tackle events

Rauser's arrest report indicates that Brown-Mosby was "tackled on the side

of 860 Taylor." (ECF No. 19-3, PageID.112-114.)  The evidence provides various

descriptions of the *post-tackle* events.  As for Plaintiff's allegation that Gadwell

"struck Plaintiff in the head multiple times with his City of Detroit issued

weapon[,]" (ECF No. 1, ¶ 10), Plaintiff testified at his deposition that "when . . .

Gadwell caught me between that house, he took out his gun and he beat me in my

head about four or five times with his gun and split the top of my head open."

(ECF No. 19-7, PageID.180 [p. 14]; *see also id*., PageID.181, 186, 188-191.)

Plaintiff also testified:

> When he tackled me between the house and was on top of me, he had
> a chance to put his handcuffs on me.  He did not.  He beat me with his
> gun . . . .

(*Id*., PageID.181 [p. 21].)  Plaintiff also testified that "I rolled over on my side and

all the blood started pouring out the hoodie of my coat." (ECF No. 19-7,

PageID.189.)  Additionally, Investigator Manuel Gutierrez's report notes, *inter*

*alia*:

- He stated that he did run from the police officers and that when he was caught by the fence (side of 860 Taylor) the officer struck him in his head with his handgun.

- He also informed me that he was feeling pain in his shoulder area and that it might have been broken.

- I did observe an open cut/abbrasion [sic] to the back of the suspects [sic] head area and a small amount of blood on the cement in the area where he was apprehended.

(ECF No. 19-3, PageID.133.)  By comparison, Gadwell reported:  "While I still had my handgun in my left hand[,] I believed that the offender was attempting to retrieve a gun and use it to shoot me.  I quickly struck the offender with the heel of my left hand in a hammer motion to his upper shoulder blade area."  (*Id.*, PageID.136, 145.)[6]

As for Plaintiff's allegation that Rauser "deployed his City of Detroit issued taser into Plaintiff's back at close range[,]" (ECF No. 1, ¶ 11), the dispute is not whether the taser was discharged.  For example, Gutierrez "observed Officer Rauser's Taser prongs still attached to the suspect . . . [,]" (ECF No. 19-3, PageID.133), and the Incident Report Related Property List includes two Anti-Felon Identification (AFID) tabs from Rauser's taser (ECF No. 19-3, PageID.120,

---

[6] There is a debate between the parties as to the *location and number* of strike(s) (*compare* Complaint, ¶ 10 [multiple to the head], *with* police records ECF No. 19-3, PageID.136, 145 [a seemingly single strike to the shoulder]). The video, when watched frame-by-frame, makes clear that there was only a single strike, but it is unclear as to what portion of the body was stricken; however, for purposes of this report, the Court assumes it was a strike to the head.

128).  (*See also id*., PageID.133-134.)  Rather, the dispute is whether the discharge

was reasonable.  At his deposition, Plaintiff testified:

> He beat me with his gun, and when his clip fell out, he told his partner
> to tase me so he could retrieve his property before the other police got
> there while I was on the ground being tased.  He picked his clip up,
> put it in his gun and on his way then took out his handcuffs and
> handcuffed me.  That's wrong.

(ECF No. 19-7, PageID.181 [p. 21].)  (*See also id*., PageID.188-189, 191-192.)  By

comparison, Rauser's report explains that, "fearing the suspect was armed with a

firearm and not showing his hands underneath his body[,] I discharged my

department issued Taser one time into the left side of his lower back[,]" (ECF No.

19-3, PageID.131, 152), and Gadwell's report explains that "the offender was

attempting to push back up again and I heard my partner yell 'taser.'  My partner

then tased the offender in the small of his back."  (*Id*., PageID.136, 145.)

### (b)   Video

As the foregoing indicates, there are some differences between Plaintiff's

allegations that he was not resisting after being tackled (ECF No. 1, ¶¶ 10-11),

Plaintiff's related testimony (ECF No. 19-7), and the various police reports (ECF

No. 19-3) – *i.e.*, differences that, in the absence of other evidence, might call into

question the reasonableness of Gadwell and Rauser's actions.  Fortunately, the

record evidence in this matter includes Rauser's 48-second BWC video of the

incident in question (ECF No. 19-4).  As the Sixth Circuit has explained:

> Ordinarily in summary-judgment appeals involving qualified immunity (like this one), we view the facts in the light most favorable to the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378 . . . (2007). But there is "an added wrinkle in this case: existence in the record of [two] videotape[s] capturing the events in question." *Id*. In such a case— "where the police dash-cam video[s] ... depict[ ] all of the genuinely disputed facts," *Standifer v. Lacon*, 587 Fed.Appx. 919, 920 (6th Cir.2014)—we "view [ ] the facts in the light depicted by the videotape[s]." *Scott*, 550 U.S. at 381 . . . .

*Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015). (ECF No. 19, PageID.83.)

The Court has viewed Rauser's 48-second BWC video (12:13:45 to 12:14:29).

During the pursuit, Gadwell appears to reach for his gun with his left hand at 4-5

seconds (12:13:48 to 12:13:50), the tackle happens at 14 seconds (12:13:59),

Gadwell – with his left hand, seemingly while still holding his gun – strikes

Plaintiff one time at 16 seconds (12:14:01), and Rauser deploys the taser at 19

seconds (12:04:04). The exact point at which Plaintiff was handcuffed is unclear

from the video, although the struggle appears to have concluded *by 30 seconds*

(12:14:14). Nonetheless, based on the video, the Court agrees with Defendants

that "it is clear . . . Plaintiff was not in full compliance to PO Gadwell after being

tackled to the ground . . . [,]" as "Gadwell was struggling to get Plaintiff's arms

behind his back." (ECF No. 19, PageID.86-87.) Once tackled, Plaintiff did not lie

flat, did not put his hands behind his back, and at no point surrendered by putting

his hands up in the air. As Defendants accurately note, this was a "rapidly

developing situation in the enclosed area of [an] alleyway," (*id*., PageID.87), and

the video shows the struggle itself was not elongated – just a matter of seconds.  It

is clear that Plaintiff was actively resisting arrest, and, having reviewed the video,

the Court finds that the post-tackle use of a single hand strike by Gadwell – even

with the previously unholstered gun still in hand – and deployment of a taser by

Rauser do not amount to constitutionally excessive force under the circumstances.

Stated otherwise, Plaintiff cannot demonstrate the violation of a clearly established

Fourth Amendment right to be free from being struck (even with a hard object and

possibly in the head) after running from the police in a dangerous felony

apprehension and continuing to resist arrest.  *See Williams v. Sandel*, 433 F. App'x

353, 362-363 (6th Cir. 2011) (not objectively unreasonable to tase thirty-seven

times, use batons and pepper spray nude suspect jogging down the highway and

resisting arrest while on ecstasy); *Est. of Collins v. Wilburn*, 755 F. App'x 550,

553, 555 (6th Cir. 2018) (officers' use of baton and "closed empty hand strikes" to

"attempt to gain control of [the plaintiff's] arms" to arrest him did not constitute

excessive force where the plaintiff had punched a police officer and remained

noncompliant after being brought to the ground); *Williams v. Ingham,* 373 F.

App'x 542 (6th Cir.2010) (the officer's use of "closed-fist blows" to Plaintiff's

"middle  back" and use of a taser during an attempt to effect the arrest of a

potentially armed, non-compliant suspect "amounted to an objectively reasonable

use of force").  Furthermore, placing this in the proper context, there is no evidence

21

that Gadwell intentionally used his weapon to strike Plaintiff; rather, Gadwell removed the gun from his holster with his left hand while running (as seen at ECF No. 19-4, 12:13:48-49) and, thus, it was already in hand during the effort to subdue Plaintiff.  And, as the video makes clear, with Gadwell using his right hand in a tenuous attempt to hold Plaintiff down, it would be unreasonable to insist that the police officer securely re-holster the gun in his left hand before striking Plaintiff.[7]

### 3.   Counts III, IV, and IV (state law causes of action)

#### a.   Assault and battery

Plaintiff's third cause of action is for "liability under state law: including but not limited to assault and battery[,]" in the course of Gadwell and Rauser's "ministerial-operational duties."  (ECF No. 1, ¶¶ 26-35.)  *Inter alia*, Plaintiff alleges Defendants failed:

a.   To act in good faith, while arresting Plaintiff and exerting excessive force upon Plaintiff;

b.   To stop wrongful conduct of a fellow officer; and,

---

[7] Defendants also claim, presumably based on the BWC or Gadwell's report, that "Gadwell saw Plaintiff's right arm go into his jacket pocket and attempt to pull out what 'looked like the barrel of a gun[,]'" but which "turned out to be a crack pipe." (*Id.*, PageID.87.)  (*See also* ECF No. 19, PageID.136, 145-146.)  If, in fact, that happened, the BWC video is too obscured by the bodies of the struggling participants for the Court to see it clearly, although one does see two objects on the ground near Plaintiff, one of which looks like the gun clip mentioned by Plaintiff (ECF No. 19-7, PageID.181 [p. 21].).

      c.     To comply with all applicable statutes, laws, rules, regulations and/or ordinances, including but not limited to the Michigan laws.

(*Id*., ¶ 30.)  Plaintiff alleges Defendants "act[ed] in bad faith and/or engag[ed] in ultra vires conduct[,]" and "wrongfully exerted excessive force upon Plaintiff, in bad faith."  (*Id*., ¶¶ 31-32.)  Plaintiff also alleges they "breached and failed to fulfill their ministerial duties . . ." by "assaulting and battering Plaintiff, exerting excessive force when arresting Plaintiff" and "failing to stop a fellow officer from wrongful conduct."  (*Id*., ¶ 33.)  Plaintiff alleges the "direct and proximate result" was injury.  (*Id*., ¶¶ 34-35.)

     "Under Michigan law an assault is 'an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.'"  *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009) (quoting *People v. Nickens,* 470 Mich. 622, 685 N.W.2d 657, 661 (2004)).  "A battery is 'an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person.'"  (*Id*.)

     However, "an arresting officer may use such force as is *reasonably* necessary to effect a lawful arrest."  *Young v. Barker*, 158 Mich. App. 709, 723, 405 N.W.2d 395, 402 (1987) (emphasis added) (citing SJI2d 115.09).  Gadwell and Rauser sensibly contend they "had probable cause to effect the arrest of [P]laintiff[,]" in support of which they state:  "[t]he video tape does not show any

form of excessive force being used despite the fact that plaintiff was, by his own admission, resisting arrest." (ECF No. 19, PageID.89 (citing ECF Nos. 19-4, 19-7).) The Court has reviewed the 48-second Rauser BWC video, which depicts the portion of the March 4, 2019 foot chase up to and including the tackle, and the Court also notes Plaintiff's October 25, 2022 deposition testimony that he was attempting to get away from Gadwell and Rauser at the time they were apprehending him (ECF No. 19-7, PageID.181 [p. 21]), he fled because he was on parole (*id*., PageID.189 [p. 52]), and he pleaded guilty to fleeing and eluding (*id*., PageID.190 [p. 57]). Notwithstanding Plaintiff's testimonial description of the tackle (*see* ECF No. 19-7, PageID.181, 188-189), the video does not "support the contention that defendants intended to hurt plaintiff without justification or excuse thereby exhibiting malice." (ECF No. 19, PageID.89.) Gadwell and Rauser also sensibly contend they "were functioning within the scope of their employment, were performing discretionary acts without malice, and as such, are immune as to plaintiffs' claims for Assault & Battery." (*Id*.) *See also* Mich. Comp. Laws § 691.1407.

Having made sensible contentions, Gadwell and Rauser have discharged their burden to show "there is no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Carver*, 946 F.2d at 455. Count III should be dismissed.

### b.   Gross negligence

Plaintiff's fourth cause of action is "gross negligence under state law[.]" (ECF No. 1, ¶¶ 36-41.)  Citing Mich. Comp. Laws § 691.1407, and presumably relying upon Subsections 691.1407(2) and 691.1407(8)(a), Plaintiff alleges Gadwill and Rauser "wantonly and recklessly, in gross negligence," callously disregarded his rights and violated the following duties:

a.   Duty to properly supervise other Defendants;

b.   Duty to provide protection for Plaintiff when he was in a helpless condition, including a duty to stop the wrongful acts of a fellow officer;

c.   Duty not to make Plaintiffs condition worse after taking him into their custody and control;

d.   Duty to properly assure the safety of Plaintiff when he was in their care; [and,]

e.   Duty to exercise reasonable care to perform an undertaking, after they undertook to render services to Plaintiff which they should have recognized as necessary for the protection of Plaintiffs person, and failed and, their failure to exercise such care increased the risk of such harm.  Rest.2nd Torts§ 323, §324A[.]

(*Id.*, ¶¶ 36, 37, 39, 40.)  He further alleges Gadwell's and Rauser's actions "caused loss of rights and injury . . . [,]" as well as "damages."  (*Id.*, ¶¶ 38, 41.)

Gadwell and Rauser reasonably contend that Plaintiff's claim of gross negligence "is predicated on the alleged excessive force used against him[,]" and that he "has no claim for gross negligence where his claim is that he was

wrongfully arrested et al [sic] through the use of excessive force by [them][,]"

because "such conduct is intentional." (ECF No. 19, PageID.92-93.) *See, e.g.,*

*Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011) ("Although establishing that a

governmental official's conduct amounted to 'gross negligence' is a prerequisite to

avoiding that official's statutory governmental immunity, it is not an independent

cause of action. The only cause of action available to plaintiff for allegations of

this nature would be for assault and battery."); *Brent v. Wayne Cnty. Dep't of Hum.*

*Servs.*, 901 F.3d 656, 700-701 (6th Cir. 2018) ("Michigan's immunity statute does

not, however, provide an independent cause of action for 'gross negligence,' and

plaintiffs may not bypass the immunity statute by 'transforming intentional

excessive force or battery claims into negligence claims.'") (citation omitted).

Having made reasonable contentions as to Plaintiff's "gross negligence"

cause of action, which the cited case law verifies as correct, Gadwell and Rauser

have discharged their burden to show "there is no genuine dispute as to any

material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). *See Carver*, 946 F.2d at 455. Count IV should be dismissed.

### c.    Intentional infliction of emotional distress (IIED)

Plaintiff's fifth cause of action is IIED against the individual Defendants.

(ECF No. 1, ¶¶ 42-45.) Specifically, he alleges that Gadwell and Rauser

intentionally and in bad faith breached duties by "subjecting plaintiff to injury

through the use of excessive force and wrongful seizure[,]" and "treating Plaintiff

in an extremely and outrageously abusive manner[,]" the "direct and . . . proximate

result" of which are various "serious and permanent personal injuries . . . ." (*Id.*,

¶¶ 44, 45.)  The Sixth Circuit has stated:

> Under Michigan law, a prima facie case for intentional infliction of
> emotional distress requires the following elements:  "(1) extreme and
> outrageous conduct; (2) intent or recklessness; (3) causation; and (4)
> severe emotional distress."  *Andrews v. Prudential Secs., Inc.*, 160
> F.3d 304, 309 (6th Cir.1998).  Michigan law does not permit recovery
> when "mere insults, indignities ... or other trivialities" occur as there
> "is no occasion for the law to intervene in every case where some
> one's feelings are hurt."  *Roberts v. Auto–Owners Ins. Co.*, 422 Mich.
> 594, 374 N.W.2d 905, 909 (1985).

*Ruffin-Steinback v. dePasse*, 267 F.3d 457, 464 (6th Cir. 2001).

Here, Gadwell and Rauser reasonably contend that "[a]ll civilized

communities have armed police forces to enforce the law and help keep the

community safe[,]" and "[a]rresting plaintiff for robbery armed unlawful driving

away of auto (RAUDAA), carjacking and police officer fleeing and eluding et al

[sic] is simply not extreme and outrageous conduct for police officers."  (ECF No.

19, PageID.91.)[8]  They also reasonably contend they "were functioning within the

scope of their employment, were performing discretionary acts without malice, and

---

[8] The 911 audio for this case confirms a reported carjacking from the night before,
a report of the stolen vehicle being found the next day in the possession of a Black
male who was not its owner, and a request for police response.  (ECF No. 19-4.)

as such, are immune as to [Plaintiff's] claims for [IIED]." (*Id*.)  *See also* Mich.

Comp. Laws § 691.1407.

Having made reasonable contentions, Gadwell and Rauser have discharged

their burden to show "there is no genuine dispute as to any material fact and the

movant[s] [are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

*See Carver*, 946 F.2d at 455.  Count V should be

dismissed.

### F.    Conclusion

As shown above, as to each of the counts against them, Defendants have

discharged their burden under Fed. R. Civ. P. 56(a), and, notwithstanding having

been given the opportunity to do so, Plaintiff has failed to respond.  Accordingly,

because Gadwell and Rauser are entitled to dismissal of Counts I, III, IV and V,

and the Court should **GRANT** their motion for summary judgment (ECF No. 19).

If this recommendation is adopted, it will resolve all claims against all parties and

terminate the case with prejudice.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 31, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE